**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Carolyn Jean Hall

    v.                                   Civil No. 11-cv-134-JL

Michael J. Astrue, Commissioner,
Social Security Administration


## REPORT AND RECOMMENDATION


Pursuant to 42 U.S.C. § 405(g), Carolyn Hall moves to reverse the Commissioner's decision denying her application for Social Security disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423. The Commissioner moves for an order affirming his decision. For the reasons that follow, I recommend that the matter be remanded for further proceedings consistent with this report and recommendation.


### Standard of Review

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

42 U.S.C. § 405(g).  However, the court "must uphold a denial of social security disability benefits unless 'the [Commissioner] has committed a legal or factual error in evaluating a particular claim.'"  Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts."  Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  But, "[i]t is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence.  Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts."  Irlanda Ortiz v. Sec'y of HHS, 955 F.2d at 765, 769 (1st Cir. 1991)

(citations omitted).  Moreover, the court "must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence."  <u>Tsarelka v. Sec'y of HHS</u>, 842 F.2d 529, 535 (1st Cir. 1988).  Finally, when determining whether a decision of the Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole."  <u>Irlanda Ortiz</u>, 955 F.2d at 769 (quoting <u>Rodriguez v. Sec'y of HHS</u>, 647 F.2d 218, 222 (1st Cir. 1981)).

### Background

The parties have submitted a Joint Statement of Material Facts, document no. 11.  That statement is part of the court's record and will be summarized here, rather than repeated in full.

In 1993, Hall had surgery for carpal tunnel syndrome[1] on both hands.  She worked as a secretary until 1998, when she says she suffered a recurrence of her carpel tunnel symptoms.

In 1999, Hall received a workers' compensation lump-sum

---

[1] Carpal tunnel syndrome is "the most common nerve entrapment [syndrome], characterized by paresthesias, typically nocturnal, and sometimes sensory loss and wasting in the median nerve distribution in the hand; often bilateral and affects women more than men; due to chronic entrapment of the median nerve at the wrists within the carpal tunnel."  Stedman's Medical Dictionary 1892 (28th ed. 2006).

settlement that included a "Permanent Impairment Award for injuries to left and right upper extremities – 11% of the whole person." Administrative Transcript (hereinafter "Tr.") 132. In 2001, she was awarded accidental disability retirement benefits from the New Hampshire Retirement System. That award was based on hand and arm pain.

Hall worked as a roadside flagger from 2000 through 2003. In 2002, she again had surgery, on both hands, for carpel tunnel syndrome. After those surgeries, she returned to her job as a flagger but quit in 2003. At her hearing, she testified that she was unable to continue working as a flagger because she kept dropping the paddle she had to hold. In 2006 and 2007 she worked part-time at a horse farm.

The medical records in this case consist almost exclusively of office notes from visits Hall made to Dr. Michelle Spencer. Those visits were generally characterized in the following way: "follow-up on her carpel tunnel syndrome for Worker's Comp." Tr. 202. Hall saw Dr. Spencer for such follow ups in March and October of 2003, November of 2006, May and December of 2007, December of 2008, and June of 2009.

Dr. Spencer's office note from November 3, 2006, states, in pertinent part:

S[ubjective]:  Carolyn is here for a follow-up on her
Workers Comp issues with her carpel tunnel syndrome.
She continues to use Neurontin[2] 400 mg [twice a day] as
well as Doxepin[3] at night.  She five weeks ago worked
for a couple of weeks cleaning stalls and it was heavy
work with wood shavings.  Now she is in a different
barn working less hours with wood pellets which are
lighter.  She works 7 in the morning to 10:30 or 11.
She is enjoying this immensely as she is getting out
of the house and loves the horses.  She is going to
start training to show horses.  She notes that she has
occasional numbness and tingling.  She is not needing
her braces but will wear them if needed.  She notes
that she is a little sore but hasn't worked in the
last couple of years.  She has been taking two Advil
after work.

O[bjective]:  She looks good.  She is very excited
about working.  She has slight positive Tinel's sign[4]
with tingling going into her index and middle fingers
bilaterally with Phalen signs.[5]  Her three middle
fingers go numb bilaterally but it is delayed and mild
numbness.  She has good strength.  No thenar atrophy.

---

[2] Neurontin is a brand name for the anticonvulsant
gabapentin.  See Dorland's Illustrated Medical Dictionary 764,
1287 (31st ed. 2007).

[3] Doxepin is a "tricyclic antidepressant of the
dibenzoxepine class . . . administered orally to treat
depression, chronic pain, peptic ulcer, pruritus, and idiopathic
cold urticaria."  Dorland's, supra, at 572.

[4] Tinel's sign is "a sensation of tingling, or of 'pins and
needles,' felt at the lesion site or more distally along the
course of a nerve when the latter is percussed; indicating a
partial lesion or early regeneration in the nerve."  Stedman's,
supra 1772.

[5] Phalen's maneuver is a "[maneuver] in which the wrist is
maintained in volar flexion; paresthesia occurring in the
distribution of the median nerve within 60 seconds may indicate
carpel tunnel syndrome."  Stedman's, supra, at 1151.

> A[ssessment] & [Plan]:  Carpel tunnel syndrome.  She
> has done well with Neurontin and Doxepin.  Question
> whether she can wean off the Neurontin some but as she
> just started working [will] leave it alone.  I am
> pleased that she is working again and seems quite
> happy.  Will see her back in six months for follow-up.
> Worker's Comp forms have been filled out for her.

Tr. 204.

In her final office note before Hall's date last insured,

dated May 15, 2007, Dr. Spencer wrote:

> S[ubjective]:  Carolyn is here for follow-up on her
> carpel tunnel syndrome for Worker's Comp.  She is
> working in Chichester cleaning stalls for a horse
> farm, which uses wood pellets.  She notes that she
> works mornings only part-time and is doing well.  She
> notes that she has kept her same Neurontin and Doxepin
> doses and is quite happy with how she is doing.  She
> is also taking lessons to show horses and is doing
> well with that.  . . .
>
> O[bjective]:  She looks good, pleasant.  She seems
> happier than prior.  She has good grip strength.  Full
> thumb strength.  She has positive Tinel's and Phalen's
> sign bilaterally, but it is quite delayed.
>
>          . . . .
>
> P[lan]:  She will continue on her Neurontin and
> Doxycycline[6] as prior.  Will use the braces as needed
> and be careful with her activities.

Tr. 202.

---

[6] Doxycycline is a "semisynthetic broad-spectrum
antibacterial of the tetracycline group."  Dorland's, supra, at
572.

In June of 2009, Hall applied for Social Security
disability insurance benefits, alleging an onset date of October
2, 2003.  Her date last insured is September 30, 2007.

In July of 2009, state-agency consultant Dr. Burton Nault
completed a Medical Assessment Form.  Under the heading "Reason
Denied," Dr. Nault did not check the box for "[i]mpairment not
severe," Tr. 212, but, rather, checked the box for "[f]ailure to
cooperate/insufficient evidence," id.  Then he wrote:

> Cl underwent bilateral [carpal tunnel syndrome]
> Release in 6 & 12/02.  F/up visits [with] provider
> indicated gradual improvement and cont'd use of
> minimal medications.  She was release[d] for FT work
> in 10/03 and did so.  She indicated in a note in
> 12/07, she'd been out of the meds for two weeks [with]
> some symptoms of Tinel's & Phalen's (L) > (R).
> However, in 12/08, she was [complaining of] dropping
> things more frequently.  She'd been let go from work
> in 5/07, but did well [with] her hands, again [with]
> meds.  However in 12/08, she is reported as doing well
> but careful [with] her hands.  The DLI was in 9/07,
> more than a year prior to her increased [symptoms] of
> CTS.  Hence, does not provide reason to explore claim
> further.  For the period of time in question from [the
> alleged onset date] to [the date last insured], there
> is insufficient [medical evidence of record] to
> actually evaluate.

Tr. 212.

In October of 2010, Dr. Spencer completed a Medical Source
Statement which asked for information on Hall's impairment as of
September 30, 2007.  Dr. Spencer listed the following diagnosis:
"Bilateral wrist pain/carpal tunnel syndrome, [status post]

carpal tunnel release bilaterally x 2 (4/93, 6/93, 2nd on R 6/02, 2nd on L 12/02." Tr. 213. When asked to identify the basis for her diagnosis, Dr. Spencer reported that she had not done any testing on Hall, id., but further reported: "She had surgery on both wrists twice. She had [positive] Tinel's [and] Phalen's signs on exam with reports of pain [and] numbness. I assessed her need for gabepentin [and] doxepin." Id. While Dr. Spencer opined that Hall had "significant limitations with reaching, handling or fingering," Tr. 214, she also opined that "Hall was capable of working 40 hours a week on September 30, 2007," id. at 213. Finally, Dr. Spencer included the following narrative statement:

> Carolyn was working part time mornings [at] a horse
> farm in Chichester cleaning stalls – they use wood
> pellets. She was also taking lessons for horse shows.
> She reported doing well with her wrist pain [at] the
> time. She could have likely worked a full time
> schedule [at] a different job that was less strenuous
> on her wrists.

Id.

The Administrative Law Judge ("ALJ") conducted a hearing at which he took testimony from both Hall and a vocational expert ("VE"). Hall testified that before her date last insured, her carpel tunnel syndrome caused numbness, tingling, and pain in her hands, and made it difficult for her to use her hands for

activities such as cooking, driving, quilting, holding a cell phone, and using a pitchfork to clean stalls at the horse farm. For his part, the VE identified several jobs that could be performed by a person who could lift and/or carry fifty pounds occasionally and twenty-five pounds frequently, but was "limited to occasional handling and fingering bilaterally."  Tr. 40.

After the hearing, the ALJ issued a decision that included the following findings of fact and conclusions of law:

> 3. Through the date last insured, the claimant had the following medically determinable impairment: status post carpal tunnel syndrome releases (20 CFR 404.1521 <u>et seq.</u>).
>
> . . . .
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments (20 CFR 404.1521 <u>et seq.</u>).
>
> . . . .
>
> 5. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 3, 2003, the alleged onset date, through September 30, 2007, the date last insured (20 CFR 404.1520(c)).

Tr. 17, 20.

**Discussion**

According to Hall, the ALJ's decision should be vacated, and the case remanded, because the ALJ's finding that her impairment had not become severe before her date last insured is not supported by substantial evidence.

A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  The only question in this case is whether Hall was under a disability before her date last insured.

For the purpose of determining eligibility for disability insurance benefits,

> [t]he term "disability" means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is disabled for the purpose of determining eligibility for disability insurance benefits, an

ALJ is required to employ a five-step process.  <u>See</u> 20 C.F.R. §

404.1520.

> The steps are: 1) if the [claimant] is engaged in
> substantial gainful work activity, the application is
> denied; 2) if the [claimant] does not have, or has not
> had within the relevant time period, a severe
> impairment or combination of impairments, the
> application is denied; 3) if the impairment meets the
> conditions for one of the "listed" impairments in the
> Social Security regulations, then the application is
> granted; 4) if the [claimant's] "residual functional
> capacity" is such that he or she can still perform
> past relevant work, then the application is denied; 5)
> if the [claimant], given his or her residual
> functional capacity, education, work experience, and
> age, is unable to do any other work, the application
> is granted.

<u>Seavey v. Barnhart</u>, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20

C.F.R. § 416.920, which outlines the same five-step process as

the one prescribed in 20 C.F.R. § 404.1520).

The claimant bears the burden of proving that she is

disabled.  <u>See</u> <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 (1987).  She

must do so by a preponderance of the evidence.  <u>See</u> <u>Mandziej v.</u>

<u>Chater</u>, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing <u>Paone v.</u>

<u>Schweiker</u>, 530 F. Supp. 808, 810-11) (D. Mass. 1982)).  Finally,

> [i]n assessing a disability claim, the [Commissioner]
> considers objective and subjective factors, including:
> (1) objective medical facts; (2) plaintiff's
> subjective claims of pain and disability as supported
> by the testimony of the plaintiff or other witness;
> and (3) the plaintiff's educational background, age,
> and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

B. Hall's Argument

Hall argues that the ALJ's step-two determination, i.e., that she did not have a severe impairment before her date last insured, is not supported by substantial evidence.  She advances that argument on three fronts, contending that the ALJ failed to: (1) accord the proper amount of weight to Dr. Spencer's opinion vis-à-vis Dr. Nault's opinion; (2) accord the proper amount of weight to the disability determinations made by the New Hampshire Department of Labor and the New Hampshire Retirement System; and (3) consult with a medical advisor to determine whether her impairment had become severe before her date last insured.  The Commissioner disagrees, categorically. The court begins by describing the principles that govern an ALJ's step-two determination.

The regulations governing step two provide that if a claimant does not have a severe impairment that meets the durational requirement, he or she is not disabled.  20 C.F.R. § 404.520(a)(4)(ii).  More specifically, "[i]f [a claimant] do[es] not have any impairment . . . which significantly limits [his or

her] physical or mental ability to do basic work activities,

[the Commissioner] will find that [the claimant] do[es] not have

a severe impairment and [is], therefore, not disabled."  20

C.F.R. § 404.1520(c).  "An impairment . . . is not severe if it

does not significantly limit [a claimant's] physical or mental

ability to do basic work activities."  20 C.F.R. § 404.1421(a).

Examples of basic work activities include:

>        (1) Physical functions such as walking, standing,
> sitting, lifting, pushing, pulling, reaching,
> carrying, or handling;
>        (2) Capacities for seeing, hearing, and speaking;
>        (3) Understanding, carrying out, and remembering
> simple instructions;
>        (4) Use of judgment;
>        (5) Responding appropriately to supervision, co-
> workers and usual work situations; and
>        (6) Dealing with changes in a routine work
> setting.

20 C.F.R. § 404.1521(b).

It is well established in this circuit "that the Step 2

severity requirement is . . . to be a de minimis policy,

designed to do no more than screen out groundless claims."

McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1124

(1st Cir. 1986).  Under Social Security Ruling ("SSR") 85-28, "a

finding of 'non-severe' is only to be made where 'medical

evidence establishes only a slight abnormality or combination of

slight abnormalities which would have no more than a minimal

effect on an individual's ability to work.'"  McDonald, 795 F.2d
at 1124 (quoting SSR 85-28, 1985 WL 56856, at *3 (S.S.A. 1985)).
In other words, proper application of step two should "do no
'more than allow the [Commissioner] to deny benefits summarily
to those applicants with impairments of a minimal nature which
could never prevent a person from working.'"  Id. at 1125
(quoting Baeder v. Heckler, 768 F.2d 547, 553 (3d Cir. 1985))
(emphasis added).

     Based on the foregoing, in order to get past step two, Hall
bears the burden of proving, by a preponderance of the evidence,
that her carpel tunnel syndrome was not such a minimal
impairment that it could never prevent a person from working.
See Bowen, 482 U.S. at 146; Mandziej, 944 F. Supp. at 129.  On
the other hand, the ALJ's determination that Hall's carpal
tunnel syndrome was not a severe impairment must be affirmed if
it is based on evidence that a reasonable mind might accept as
adequate to support it.  See Currier, 612 F.2d at 597.  Here,
the ALJ identified three categories of evidence supporting her
determination: the medical evidence, Dr. Nault's medical
assessment, and Hall's activities of daily living.  None is
sufficient to support the ALJ's determination that Hall's carpel
tunnel syndrome was not a severe impairment.

The ALJ correctly notes that Hall received relatively little treatment for her carpal tunnel syndrome between 2003 and 2007. Even so, Hall has undergone two surgeries on each hand for that condition, and the medical records cannot reasonably be read as showing that Hall was somehow cured as result of her more recent surgery. She continued to see Dr. Spencer for follow-up on her carpel tunnel syndrome, continued to exhibit signs of that condition, and continued to be prescribed medication for it. Bearing in mind that the question at step two is not whether Hall is disabled but, rather, whether her carpel tunnel syndrome could never have anything more than a minimal effect on her ability to work, the medical evidence in this case could not be accepted by a reasonable mind as supporting the conclusion that Hall's carpel tunnel syndrome is not a severe impairment.

In reaching her decision, the ALJ gave "significant weight to the opinion of Dr. Nault because it [was] consistent with the medical evidence of record." Tr. 19. The ALJ explained:

> The State agency medical consultant's physical assessment (Exhibit 2F) supports the conclusion that there [was] no severe impairment through the date last insured. Burton Nault, M.D., opines that from the alleged onset date through the date last insured, there [was] insufficient medical evidence in the claimant's record to evaluate whether a severe impairment existed (Exhibit 2F).

15

Tr. 19.  As noted above, the form Dr. Nault completed expressly gave him the opportunity to opine that Hall's carpel tunnel syndrome was not a severe impairment.  Instead of doing so, however, he said that he could not say one way or the other.  It is not at all clear how Dr. Nault's ambivalence counts as evidence in support of a proposition he expressly declined to adopt.  Calling Dr. Nault's averment that he could not determine the severity of Hall's carpel tunnel syndrome an opinion that supports a conclusion that the impairment was not severe seems to overstate the actual gravamen of Dr. Nault's assessment.

The ALJ also points to Hall's activities of daily living.  But, again, while that evidence might be persuasive in support of a determination that Hall was not credible or was not disabled, the question at step two is much more limited.  What Hall was able to do on a daily basis is only weakly probative of the step-two question, which is whether Hall's carpel tunnel syndrome had more than a minimal effect on her ability to work.

Turning to that question, there is uncontroverted evidence in the record that as of her date last insured, Hall had suffered from carpel tunnel syndrome for more than fourteen years and had undergone surgery twice, on each hand, for that condition.  Between those two surgeries, Hall received workers'

compensation for her carpal tunnel syndrome, based on a partial permanent disability, and also received a disability-based award of benefits from the New Hampshire Retirement System.  While the disability determinations on which those awards are based are not binding on the Commissioner, see 20 C.F.R. § 404.1504, they are at least persuasive evidence that Hall's carpel tunnel syndrome has had more than a minimal effect on her ability to work.  Finally, Hall herself has testified that after she had her second set of surgeries, she returned to her job as a flagger, only to quit, due to her inability to hold a paddle. That was the second job Hall found herself unable to perform as a result of her carpel tunnel syndrome, and she also testified that her carpel tunnel syndrome affected her ability to use a pitchfork and handle horses while performing her part-time farm job.

To carry her light burden of showing that she had an impairment that had more than a minimal effect on her ability to work, Hall has produced her own testimony and her treating physician's opinion that she had a significant limitation on her capacity for reaching, handling, or fingering.  The Commissioner, however, has not identified evidence that a reasonable mind could accept to support the ALJ's conclusion

17

that prior to September 30, 2007, Hall's carpel tunnel syndrome was such an insignificant impairment that it had no more than a minimal effect on her ability to perform work-related activities.

It may well be that Hall was not disabled during the relevant period, but not because she did not have a severe impairment, which is the only question before the court at this juncture.  Thus, this case must be remanded for a proper consideration of Hall's impairment and its effect on her ability to work.

## Conclusion

For the reasons given, I recommend that: (1) the Commissioner's motion for an order affirming his decision, document no. 10, be denied; and (2) Hall's motion to reverse the decision of the commissioner, document no. 6, be granted to the extent that the case is remanded to the ALJ for further proceedings, pursuant to sentence four of 42 U.S.C. § 405(g).

Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  Failure to file objections within the specified time waives the right to appeal the district court's order.  See United States v. De Jesús-Viera, 655 F.3d 52, 57

(1st Cir. 2011) (citing <u>United States v. Lugo Guerrero</u>, 524 F.3d 5, 14 (1st Cir. 2008)); <u>Sch. Union No. 37 v. United Nat'l Ins. Co.</u>, 617 F.3d 554, 564 (1st Cir. 2010) (only issues fairly raised by objections to magistrate judge's report are subject to review by district court; issues not preserved by such objection are precluded on appeal).

_____
Landya B. McCafferty
United States Magistrate Judge

November 29, 2011

cc:  Patrick K. Marsh, Esq.
     Gretchen Leah Witt, Esq.